## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CRAIG MIDDLEMASS, | : | |
| Petitioner, | : | CIVIL ACTION NO. |
| | : | 14-CV-729 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | MARCH 28, 2016 |
| Respondent. | : | |

### RULING RE: MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
### PURSUANT TO 28 U.S.C. § 2255 (Doc. No. 1)

## I.    INTRODUCTION

Craig Middlemass ("Middlemass") brings this Motion to Vacate, Set Aside, or

Correct Sentence under section 2255 of title 28 of the United States Code.  See Motion

to Vacate, Set Aside, or Correct Sentence (the "Motion" or the "Section 2255 Motion")

(Doc. No. 1).  His first contention is that his sentence violated the Ex Post Facto Clause

of the Sixth Amendment to the United States Constitution because it applied a version

of the Guidelines that came into effect after the commission of the crime of conviction,

and that was more punitive than the version of the Guidelines in effect during the

commission of his crime of conviction.  See U.S.S.G. § 1B1.11(b)(1).  His second

contention is that his counsel was ineffective, in violation of the Assistance of Counsel

Clause of the Sixth Amendment to the United States Constitution, for failing to appeal

his sentence when asked.

The United States has opposed the Motion.  See Memorandum in Opposition

("Opposition") (Doc. No. 7).  For the reasons set forth below, the Motion is **DENIED**.

II.    **BACKGROUND**

A.    Middlemass's Plea and Sentencing

On May 2, 2007, Craig Middlemass waived his right to an indictment and pled

guilty to an Information charging him with one count of Production of Child Pornography,

in violation of section 2251(a) of title 18 of the United States Code.  See Minute Entry

(Doc. No. 19).  The Information alleged, and the Plea Agreement stipulated to, conduct

comprising the offense of conviction that spanned from the summer of 2003, when

Middlemass induced an individual known as Minor A to take part in the production of

sexually explicit photographs in California, through some time in 2004, when

Middlemass physically transported those images in interstate commerce to Connecticut.

See Information (Doc. No. 15) at 1, and Plea Agreement (Doc. No. 17) at 10.[1]  The

Guidelines provide that, in determining which version applies for purposes of the Ex

Post Facto clause, "the last date of the offense of conviction is the controlling date."

U.S.S.G. § 1B1.11, comment. (n.2).

The Plea Agreement also stipulated to facts establishing that Middlemass

possessed more than 3,200 images of child pornography, in the form of photographs,

8mm and 16mm films, compact discs, digital video discs, computer diskettes,

magazines, books, buttons, personal photo albums, and digital images stored on his

computers' hard drives.  Id.  Some of these images portrayed sadistic or masochistic

conduct.  Id. at 5.  Further, the Plea Agreement stipulated that Middlemass had

---

[1] In his Reply to the Government's Response, Middlemass suggests that he actually transported the photographs at issue on December 2003.  Reply to Response to Motion ("Reply to Response") (Doc. No. 11) at 8 ("All [the media pertaining to related conduct, not the photographs in question,] were stored in Connecticut from the time Petitioner moved away in 1993 until recovered in July 2005 (18 months after Petitioner's return to Connecticut).").  The difference is immaterial for purposes of this Ruling, however: the court will assume that his offense of conviction was completed before November 1, 2004, when the Guidelines were amended to punish his offense conduct more severely.  See infra at 4.

distributed at least nine images "[a]t various times between 2003 and 2006."  Id. at 10-11.

The Plea Agreement further stipulated to a Guidelines range of 262 to 327 months.  Id. at 4.  Though the Agreement does not expressly state which version of the Guidelines it applies, section 1B1.11(a) of the Guidelines would normally mandate that the version in effect at sentencing would apply.  Consequently, the Agreement is likely to have applied the 2006 version of the Guidelines,[2] and this is the version that the court presumably applied at Middlemass's sentencing on October 26, 2007.  At that proceeding, Middlemass was sentenced to the top of the 2006 Guidelines range: 327 months.  See Case No. 07-CR-91, Judgment (Doc. No. 35).  As sentence was imposed, the court stated, "I think that the Guidelines are appropriate.  The top of the Guideline is appropriate.  As a matter of fact, I wouldn't be surprised if I felt 30 years is appropriate. I think this is a very serious matter."  Case No. 07-CR-91, Sentencing Transcript (10/26/2007) (Doc. No. 36) at 36:6-11.

According to his Motion, Middlemass asked his counsel to appeal the sentence and his counsel failed to do so.  Section 2255 Motion at 5.  Middlemass explains, in his Reply to the United States' Opposition, that at some point after his sentencing, he learned that his attorney had contacted Middlemass's brother to explain that "the Judge's offer [to permit an appeal notwithstanding his Plea Agreement's waiver of such right] was a mere formality and that if there was an appeal to be made, he would have already made it."  Reply to Response to Motion ("Reply to Response") (Doc. No. 11) at 24.

---

[2] The 2006 Guidelines provided for a sentencing range of 262-327 months given the Offense Level and Criminal History Category agreed to in the Plea Agreement.  See Plea Agreement at 5.

B.    Changes to the Guidelines

At the time Middlemass engaged in the conduct giving rise to his offense of conviction, i.e. from 2003 to October 31, 2004,[3] the United States Sentencing Guideline that governed Middlemass's offense mandated a Base Offense Level of 27 and contained a single applicable enhancement of two points to account for the fact that Minor A, Middlemass's victim, was between the ages of 12 and 16 at the time of the offense.  See U.S.S.G. § 2G2.1 (2003).  After subtracting the three points Middlemass was granted for acceptance of responsibility under section 3E1.1, the 2003 Guidelines would have mandated an Offense Level of 26, which, considering Middlemass's Criminal History Category of I, would result in a sentencing range of 63 to 78 months.

Just as they do today, the 2003 Guidelines also required the imposition of a criminal statute's mandatory minimum sentence if such mandatory minimum "is greater than the maximum of the applicable guideline range."  2003 U.S.S.G. § 5G1.1(b).  The mandatory minimum penalty for the crime of which Middlemass was convicted was, at the time he committed it and today, fifteen years' imprisonment.  18 U.S.C. § 2251(a) (2003).  Thus, Middlemass's Guidelines range under the 2003 version of the Guidelines was 180 months.

---

[3] Again, the court assumes that Middlemass's offense conduct was completed for purposes of the Guidelines calculation before October 31, 2004.  See supra p. 2 n.1.  The exact date at which Middlemass's crime was completed, however, is not altogether clear from the record.  Compare Information at 1 ("From on or about June 2003 through September 2003 [Middlemass induced a minor to engage in sexually explicit conduct and photographed it], such visual depictions having actually be transported in interstate commerce from California to Connecticut by the defendant."); and Reply to Opposition at 8 (claiming Middlemass moved the photographs in December 2003) with Plea Agreement at 10 ("Further, when the defendant moved from California to Connecticut in 2004, he transported in interstate commerce the images of child pornography of Victim A which he had produced."); and United States' Supplemental Memorandum ("Supplemental Memorandum") (Doc. No. 19) at 2 (claiming that Middlemass agreed that he had "produced child pornography—by making the images in California in 2003 and transporting them across state lines in 2004 . . . .").

However, the Guidelines changed considerably on November 1, 2004.  The Base Offense Level for the offense of conviction was raised to 32 from 27, and several new enhancements were added.  Those that Middlemass stipulated applied to his case were a two-point enhancement for contact with the victim; a two-point enhancement for involvement with distribution; and a four-point enhancement for material that "portrays sadistic or masochistic conduct or other depictions of violence."  Guidelines § 2G2.1 (2004).  After accounting for Middlemass's three-point reduction for acceptance of responsibility, his Offense Level was calculated as 39, which resulted in in a Guideline range of 262 to 327 months, up from 63 to 78 months under the 2003 Guidelines.

      C.    <u>Middlemass's Section 2255 Motion</u>

Judgment was entered on Middlemass's criminal case on October 26, 2007. Case No. 07-CR-91, Judgment (Doc. No. 35).  Though Middlemass does not specify precisely when he was alerted that his counsel had failed to file a notice of appeal, his papers suggest that he was made aware of his counsel's failure to do so within a month of being incarcerated, a period that began when he was sentenced on October 26, 2007.  Reply to Response at 24.

Middlemass filed his Section 2255 Motion on May 20, 2014.  His Motion alleges that his sentence violated the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause of the Sixth Amendment to the United States Constitution by applying a version of the Guidelines that came into effect after, and was more punitive than the version in effect at the time of, the commission of the crime of conviction; and that his attorney provided ineffective assistance of counsel in violation of the Assistance of Counsel Clause of the Sixth Amendment to the United States Constitution by failing to file a notice of appeal when asked.  <u>See</u> Motion at 5.

In addition to opposing the Motion on the merits, the United States has raised the statute of limitations in section 2255(f) as a defense.  See Memorandum in Opposition at 10-13.  That section provides:

> **(f)** A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—
>
> > **(1)** the date on which the judgment of conviction becomes final;
> >
> > **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> >
> > **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been made newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Middlemass does not argue that his Motion is timely if measured by the date on which the judgment of conviction became final.  He does, however, contend that his Motion is timely under subsections (f)(3), (f)(2), or (f)(4).  Specifically, he appears to argue, first, that his Motion was timely filed within a year of the Supreme Court's decision in United States v. Peugh, 133 S. Ct. 2072 (2013), decided on June 10, 2013. Peugh held that the Ex Post Facto Clause applied to the advisory Guidelines sentencing regime ushered in by United States v. Booker, 543 U.S. 220 (2005).  See Section 2255 Motion at 13.

Second, in an Addendum filed on April 15, 2015, Middlemass argues that the recent Memorandum, prepared by Deputy Attorney General James M. Cole, requesting

that all federal prosecutors cease enforcing plea agreement waivers of claims of ineffective assistance of counsel, constituted the "removal of an impediment" to his Motion, as envisioned by subsection (f)(2).  See Addendum (Doc. No. 13) at 3; Memorandum by James M. Cole, Deputy Attorney General, To All Federal Prosecutors, Oct. 4, 2014 (the "DOJ Memorandum").

Third, in the aforementioned Addendum, Middlemass claims that his Motion is timely under subsection (f)(4) in that the DOJ Memorandum is a "fact supporting the claim or claims" in his Motion such that the clock restarted on the date he filed the Addendum.  Addendum at 4-5.

The court issued an Order to Show Cause in light of Middlemass's Addendum, and the United States replied on December 18, 2015.  United States' Supplemental Memorandum ("Supplemental Memorandum") (Doc. No. 19).  Middlemass sought, and the court granted, an extension to file a reply to the United States' Supplemental Memorandum.  Order (Doc. No. 23).  Middlemass then timely filed his Response (Doc. No. 24) on February 26, 2016.

## III.   DISCUSSION

In April of 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which imposed a one-year period of limitations for the filing of petitions by federal prisoners under section 2255 of title 28 of the United States Code.  See Pub. L. No. 104-132, 110 Stat. 1214 (1996).  As discussed above, the one-year period begins to run from the latest of one of four different dates: the date a judgment has become final; the date an unconstitutional impediment to making a motion, imposed by the Government, has been removed; the date a retroactive rule has been recognized by

the Supreme Court; or the date newly discovered evidence could have been reasonably discovered.  28 U.S.C. § 2255(f).  Middlemass's Motion was untimely irrespective of which date is considered to have triggered the statute of limitations.

As an initial matter, where a defendant does not take a direct appeal, a judgment becomes final for purposes of section 2255(f)(1) when the time for filing a notice of appeal expires.  Wims v. United States, 225 F.3d 186, 188 (2d Cir. 2000).  His judgment became final 10 days after judgment was entered on October 30, 2007; namely, November 13, 2007.[4]  Consequently, Middlemass's first period of limitation expired on November 13, 2008; his Motion was filed May 20, 2014, over 6 years after his deadline to file a notice of appeal expired.  Consequently, Middlemass's Motion is untimely under subsection (f)(1).

Middlemass next claims that his Ex Post Facto claim is timely because it should be measured from June 10, 2013, when the Supreme Court decided Peugh v. United States.  Motion at 13.  However, the Second Circuit has held that Peugh does not apply retroactively to cases on collateral review, as required for the applicability of subsection (f)(3).  Herrera-Gomez v. United States, 755 F.3d 142, 147 (2d Cir. 2014) (Peugh is not a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court") (internal citations and quotation marks omitted).

Next, Middlemass claims that the DOJ Memorandum removed an unconstitutional impediment that prevented him from making the Motion earlier. Addendum at 2.  This argument fails.  Waivers of the ability to make claims of ineffective assistance of counsel have been consistently upheld as lawful.  See, e.g., Parisi v.

---

[4] The 10-day period to file a notice of appeal in a criminal case was changed to a 14-day period in 2010.  Fed. R. App. P. 4(b).

United States, 529 F.3d 134, 138 (2d Cir. 2008).  Consequently, the Department of

Justice's non-binding Memorandum requesting that prosecutors refrain from enforcing

such waivers, while removing an impediment to collateral review, certainly does not

remove an unlawful impediment, as required by subsection (f)(2).

Middlemass also claims that the DOJ Memorandum constitutes a "[fact]

supporting [his] . . . claims," such that the clock began running on the date that he could

reasonably have become aware of the DOJ Memorandum, pursuant to section

2255(f)(4).  However, Middlemass cites to no authority, and the court can locate no

authority, that supports the proposition that such a non-binding Memorandum can

constitute a "fact" that "supports a claim" brought in Middlemass's Motion.  Nothing

about the Memorandum supports either of Middlemass's substantive claims, i.e., his Ex

Post Facto claim or his ineffectiveness claim.  Rather, the Memorandum simply purports

to give Assistant United States Attorneys the ability generally to refrain from enforcing

waivers of certain claims.  Unlike a new fact that actually supports a substantive claim –

such as the vacatur of an underlying state conviction that precludes an enhanced

federal sentence, or the results of a D.N.A. test, see Johnson v. United States, 544 U.S.

295,  310 (2005) – the Memorandum purports to enable defendants to raise ineffective

assistance claims by advising prosecutors to "exempt ineffective-assistance claims from

[the] waiver provisions" of a petitioner's plea agreement.  Memorandum at 1.

Accordingly, the deadline to file his section 2255 petition did not "restart" under

subsection (f)(4) upon the issuance of the DOJ Memorandum.

Middlemass's claim that his counsel was ineffective for failing to file an appeal is

also time-barred.  Though he does not state a precise date at which he became aware

9

that his lawyer did not follow his instruction to file a notice of appeal, subsection (f)(4) sets the clock running upon the date at which "the facts supporting the claim or claims presented <u>could have been discovered through the exercise of due diligence</u>."  28 U.S.C. § 2255(f)(4) (emphasis added).  As the court stated in <u>Zapata v. United States</u>, Nos. 99-CV-85, 2000 WL 1610801 at *2 (S.D.N.Y. Oct. 27, 2000), "a duly diligent person [does not require] three and a half years . . . to discover that counsel had not filed a notice of appeal."  Middlemass waited no fewer than 66 months – five and a half years – to file his Section 2255 Motion after his period to file a notice of appeal expired. In light of this length of time, the court concludes that Middlemass's Petition as to this claim is also precluded by the statute of limitations.

As to either claim, Middlemass's Motion is also untimely under the "equitable tolling" doctrine.[5]  In the Second Circuit, a claim may be timely despite its having fallen outside the statutorily-mandated 1-year period of limitation if the petitioner can "show that extraordinary circumstances prevented him from filing his petition on time, and [that] he . . . acted with reasonable diligence for the period he seeks to toll." <u>Baldayaque v. United States</u>, 338 F.3d 145, 150 (2d Cir. 2003) (quoting <u>Hizbullahankhamon v. Walker</u>, 225 F.3d 65, 75 (2d Cir. 2001)).  Middlemass has not put before the court any "extraordinary circumstances" that may have caused his delay. Neither has he alleged any facts that indicate that he acted with reasonable diligence during the period exceeding five years that he now seeks to toll.

---

[5] Though Middlemass does not seek to avail himself of this doctrine expressly, the court construes his Section 2255 Motion to have sought relief from the statute of limitations on that ground. <u>See</u> Section 2255 Motion at 13 ("Movant is exercising the fundamental miscarriage of justice exception to the 1 year statute of limitations for filing.").

When Congress implemented the one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act, it placed a burden on the prospective federal habeas petitioner to find and bring his claim in a timely fashion, irrespective of the claim's merit.  Middlemass raised his claims too late.  For this reason, his Motion is **DENIED**.

## IV.    CONCLUSION

Middlemass's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) is **DENIED**.  Because Middlemass has not made a "substantial showing" of denial of a constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253(c)(2).

The Clerk is hereby directed to close this case.

**SO ORDERED**.

Dated at New Haven, Connecticut, this 28th day of March, 2016.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

11